UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL L. FARLEY and
KIMBERLY FARLEY,

                               Plaintiffs,

        v.

UNITED STATES OF AMERICA,

                               Defendant.

**DECISION AND ORDER**
11-CV-198S

## I.  INTRODUCTION

Plaintiffs Michael and Kimberly Farley bring this negligence and loss of consortium action against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging injury as a result of Defendant's negligent control and supervision.  Presently before this Court is Defendant's Motion to Dismiss for Lack of Jurisdiction.[1]  For the following reasons, Defendant's motion is granted in part and denied in part.

## II.  BACKGROUND

### A.     Factual History

The Buffalo Federal Detention Facility ("Detention Facility" or "Facility"), located in Batavia, New York, first opened in 1997.  (Tryon Decl. ¶¶ 1, 3, Docket No. 10.)  The Detention Facility is identified as a "Service Processing Center," owned by the Department

---

[1]In support of its Motion to Dismiss, Defendant filed a Memorandum of Law; the Declaration of Scott A. Whitted; the Declaration of Todd L. Tryon, with Exhibit; and a Reply Memorandum.  (Docket Nos. 8, 9, 10, 19.)  In opposition, Plaintiffs filed a Memorandum of Law; and an Attorney Affidavit, with Exhibits. (Docket Nos. 14, 15.)

of Homeland Security, Immigration and Customs Enforcement ("ICE").  (Id. ¶ 4.)[2]  The

Detention Facility holds as many as 650 detainees, 550 of whom are immigration

detainees, and 100 of whom are United States Marshal Services pre-trial/pre-sentence

detainees.  (Id. ¶ 4.)  ICE has responsibility over processing detainees, including

deportation of aliens ordered removed from the United States.  (Id.)

In 2003, ICE entered a contract with Asset Protection & Security ("Asset"), revised

in 2006, making Asset responsible for operating the majority of the Detention Facility's

housing units.  (Id. ¶ 8.)  The contract was amended again in 2008, making Asset

responsible for all housing units.  (Id.)  Pursuant to this contract, Asset was to "furnish

unarmed custody officer services, including management personnel, supervision,

manpower, relief custody officers, uniforms, equipment, and supplies to provide custody

officer services seven (7) days a week, twenty-four (24) hours per day at the [Detention

Facility]."  (Def.'s Ex. A, p. 10, Docket No. 10-1.)

Plaintiff, Michael Farley, was an Asset employee on September 23, 2008, working

as a custody officer.  (Comp. ¶ 16, Docket No. 1.)  On that day, Mr. Farley was assigned

to patrol a housing unit within the Detention Facility referred to as Housing Unit Bravo I.

(Comp. ¶ 18.)  While on patrol, Mr. Farley was assaulted by a felon-detainee who was

known by Defendant to have violent propensities towards corrections officers, like Mr.

Farley.  (Comp. ¶¶ 19, 23.)

Thereafter, on September 3, 2010, Mr. Farley filed an administrative claim with the

Department of Homeland Security, the Federal Law Enforcement Training Center, and the

---

[2]The Detention Facility was originally under the control of Immigration and Naturalization Services
("INS"), but this changed on March 1, 2003 when INS was dissolved and its responsibilities transferred to
the Department of Homeland Security.  Homeland Security Act, Pub. L. 107-296, § 291, 116 Stat. 2135
(2002).

Federal Bureau of Prisons.  (Comp. ¶ 6.)  The Federal Law Enforcement Training Center denied the claim on September 14, 2010, and the Department of Homeland Security did likewise on February 22, 2011.[3]

## B.    Procedural History

Plaintiffs commenced this action on March 8, 2011, by filing a Summons and Complaint in the United States District Court for the Western District of New York. Defendant filed a motion to dismiss on June 20, 2011.  After an extension of the briefing schedule, the parties' briefs were deemed submitted as of September 12, 2011, at which time this Court took Defendant's motion under consideration without oral argument.

## III.  DISCUSSION AND ANALYSIS

## A.    Rule 12(b)(1) Standard

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing the existence of federal jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Where, as here, the jurisdictional challenges are raised at the pleading stage, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008). It is "presume[d] that general [fact] allegations embrace those specific facts that are necessary to support the claim."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889, 110 S.

---

[3]The Federal Bureau of Prisons did not address Mr. Farley's claim, but forwarded it to ICE. (Comp., Ex. B.)

Ct. 3177, 111 L. Ed. 2d 695 (1990) (alterations added).  The court may also consider affidavits and other evidence outside the pleadings to resolve the jurisdictional issue, but it may not rely on conclusory or hearsay statements contained in affidavits.  J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005).  Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction."  Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n. 6 (2d Cir. 2001).

## B.      Plaintiffs' FTCA Claims

The FTCA constitutes a limited waiver of the United States' privilege of sovereign immunity.  Pursuant to the FTCA, a district court has jurisdiction over:

> [C]ivil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  In the present case, that law is that of the state of New York.

The FTCA also contains various exceptions under which its provisions will not provide a remedy. These must be "strictly construed in favor of the government." Akutowicz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988).

Citing three of these statutory exceptions, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiffs' FTCA claims.  This Court will consider each exception in turn.

### 1.      Independent Contractor Exception

Pursuant to the FTCA, an individual may only recover for injuries "caused by the

negligent or wrongful act or omission of any *employee* of the Government."  28 U.S.C. § 1346(b)(1) (emphasis added).  This is the basis for the "general rule, [that] sovereign immunity precludes suits against the United States for injuries caused by its independent contractors."  Roditis v. United States, 122 F.3d 108, 111-12 (2d Cir. 1997) (per curium). Whether a worker is a federal employee or an independent contractor is a question of federal law.  Leone v. United States, 910 F.2d 46, 69 (2d Cir. 1990).  In making this determination, the "critical element" is "the power of the Federal Government 'to control the detailed physical performance of the [individual].'"  United States v. Orleans, 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976).  "The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government."  Leone, 910 F.2d at 50.  This is known as the "strict control test."  Id. at 49.

Plaintiffs assert that material issues of fact are outstanding that preclude dismissal of their FTCA claims.  Specifically, Plaintiffs argue that for lack of discovery, it cannot be stated that the federal government did not fail to perform a duty actually exercised by it, or that Defendant did not exercise sufficient control over Asset to make it liable for its contractor's negligent acts or omissions.  Defendant responds that the contract between it and Asset clearly states that physical control and daily supervision of the housing units was delegated to Asset.

In support of their respective arguments, both sides cite to this Court's decision in Cerrone v. United States, No. 03-CV-848S, 2006 WL 2795614 (W.D.N.Y. Sept. 26, 2006). That case dealt with an FTCA claim brought by an employee of a local contractor retained by the Army Corps of Engineers.  After the plaintiff injured himself while pouring concrete, he sought to hold the United States liable for failing to provide a safe work environment,

ensure the existence of adequate safety devices, and provide adequate supervision.  This Court considered the terms of the contract between the contractor and defendant, which provided that it would be the contractor's duty to superintend the work-site and be responsible for safety and accident prevention.  Id. at *3.  The only obligation the defendant reserved was the right to conduct general oversight over the project, including the right to inspect for non-compliance and halt work if the contractor refused to take the necessary steps to come into compliance.  Id. at *4.  This Court held that this was not sufficient to establish the necessary agency relationship under the FTCA because the defendant did not retain sufficient responsibility over the work-site to make itself subject to suit.  Id. at *3.

Like the contract in Cerrone, here the contract clearly places the weight of responsibility on Asset's shoulders.  Specifically, the contract provides that:

> The Contractor shall provide a safe and secure environment for staff, detainees and the public through effective security. The contractor shall continuously monitor programs, seek ways to reduce and control violence in the facility, respond effectively to emergencies, limit tools and other potentially dangerous equipment and secure posts. The Contractor shall monitor detainee programs and Contractor staff performance. In addition, the Contractor shall communicate policy, procedures and operations practices using INS written instructions and policy statements.

(Def.'s Ex. A, p. 17.)

Also like in Cerrone, Defendant here, by the terms of the contract, retained only supervisory powers.  "The Government has the right to inspect the posts manned by the Contractor's personnel . . . . and will note deficiencies and refer them to the Contractor for corrective action."  (Def.'s Ex. A, p. 44.)  The contract goes on to explain various types of inspection that might occur, but that the "Government shall not unduly disrupt or delay Contractor work when inspecting."  (Id. at 45.)

-6-

But the inquiry does not end with the contract.  In <u>Cerrone</u>, this Court further observed that the contractor actually did supervise the day-to-day operations at the work-site and that defendant never directed plaintiff to perform any particular task.  2006 WL 2795614, at *5.  Here too, various of the Defendants' actions embodied its supervisory role.  For example, at least one ICE facility manager was on duty during each of the three eight-hour work shifts.  (Tryon Aff. ¶ 12.)  These facility managers would also conduct at least one set of rounds through the building per shift.  (<u>Id.</u>)

Various other actions, however, evidence ICE employees taking a more proactive role in their interactions with Asset employees.  At various times, ICE would instruct Mr. Farley to locate a particular detainee, and transport him to a different part of the facility.  (Farley Aff. ¶ 6.)  ICE would also personally come to the housing units and take charge of detainees.  (<u>Id.</u> ¶ 7.)  Additionally, ICE would instruct Asset personnel regarding where detainees were to be placed, which detainees should be kept separate from each other, and when a detainee was to be put on 24-hour lock down.  (<u>Id.</u> ¶¶ 8, 9.)  ICE also told Mr. Farley to change the furniture layout within a housing unit, so the furniture would be further away from the Facility's control tower.  (<u>Id.</u> ¶ 10.)  Finally, ICE allegedly made the decision to release, from the special housing unit, the detainee who went on to assault Mr. Farley on September 23, 2008.  (<u>Id.</u> ¶ 14.)

Defendant seeks to counter these examples by pointing to Facility Director Todd L. Tryon's declaration that "ICE is responsible for processing aliens and other detainees into the detention facility and for making arrangements for the deportation of aliens who are ordered removed from the United States," to the effect that any actions taken by ICE were within its reserved powers, and do not evidence control over the contractor's day-to-day operations.  (Tryon Decl. ¶ 4.)  Notably, Defendant does not point the Court to specific

contract provisions clearly delineating the separation of duties between ICE and Asset personnel.  But even ignoring this fact, this Court is not prepared to rule on the basis of the evidence before it, that these roles were so distinct as to warrant dismissal.

Asset was charged with providing a safe and secure environment.  Yet, ICE still at various points dictated where detainees should be held, who they should be housed with, and when they should be put in isolation.  On at least one occasion, ICE instructed Mr. Farley to move furniture further away from a control tower, clearly implicating the very security concerns Defendant asserts were in Asset's purview.  Lastly, it is noteworthy that under Asset's original contract, ICE retained significantly more responsibility.  Only in 2006 was the contract modified to make Asset responsible for operating most housing units, which was then extended in early 2008 to make Asset responsible for operating all housing units, including the special housing unit.  (Tryon ¶ 8.)  Although ICE formally delegated supervisory powers to Asset later in the contract, by that stage ICE had become fully familiar with how to run the Facility itself, including the housing units.  This makes it more plausible that, even after responsibility for most of the Facility was transferred to Asset, ICE officers continued to act as they had prior to the contract and its revisions, instructing Asset employees to do what they themselves have done.

Accordingly, this Court does not find that Plaintiffs' FTCA claim is barred at this time by the independent contractor exception.

### 2.    Discretionary Act Exception

In addition to holding Defendant liable for those acts of Asset over which Defendant is alleged to have exercised control, Plaintiffs also seek to hold Defendant liable for negligently carrying out those duties for which it was responsible.  "[T]he fact that an independent contractor may have been responsible for [plaintiff's injury] cannot be viewed

as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort." King v. United States, 491 F. Supp. 2d 286, 295 (D. Conn. 2007) (quoting Berkman v. United States, 957 F.2d 108, 114 (4th Cir. 1992)) (alterations in original).

Reviewing the parties' submissions, there appears to be some conflation between Plaintiffs' various claims and the potential applicability of any given statutory exception to them.  For example, Plaintiffs argue that "defendant could be liable for failing to [sic] in its affirmative duty to ensure compliance with ICE safety policies and procedures" and that it "failed to provide adequate staffing, failed to implement security measures, procedures, and protocol."  (Pls.' Resp. 9, 19, Docket No. 14.)  Plaintiffs further argue that it requires discovery to fully ascertain the extent to which Asset was in violation of specific ICE policies and procedures and, by extension, the degree to which Defendant failed in an affirmative duty to hold Asset to the terms of the contract.  Plaintiffs also, however, concede that "determinations regarding training, supervision, staffing, and security protocols at the [Facility] . . . . would amount to discretionary decisions, as they implicated economic and safety considerations of the government" and would be excluded by the FTCA's discretionary function exception.  (Id. at 19.)

The FTCA recognizes a statutory exception for "claim[s] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. Gaubert, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  To determine whether this exception applies, courts employ a two-prong test.  First, a court looks to whether the act in question "invol[ves] an element

of judgment or choice," id. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)).  Second, the court considers whether the actions and decisions at issue were based on considerations of social, economic, political, or other public policy.  Id. at 323.

As this Court has previously found, "the United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of contractors is a discretionary function."  Cerrone, 2006 WL 2795614, at *3 (quoting Shivcharan v. United States, No. 04 CV 1296, 2005 WL 408046, at *2 (E.D.N.Y. Feb. 15, 2005)).  Further, "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."  Id. (quoting United States v. Varig Airlines, 467 U.S. 797, 819-20, 104 S. Ct. 2755, 91 L. Ed. 2d 660 (1984)).

Relying on its prior decision in Cerrone, this Court concludes that Plaintiffs' claims, to the extent they are based on Defendant's alleged failure to adequately supervise its contractor, must be dismissed.  Plaintiffs assert that the Government failed to responsibly supervise Asset and Asset's implementation of ICE's policies.  Such supervision clearly implicates discretionary "choices motivated by considerations of economy, efficiency, and safety."  Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000).  Indeed, "FTCA cases have uniformly held that prison decisions regarding security matters are protected by the discretionary function exception."  Chen v. United States, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *8 (E.D.N.Y. May 24, 2011) (quoting Green v. United States, Civ. A. No. 94-5706, 1995 U.S. Dist. LEXIS 14190, at *10, 1995 WL 574495 (E.D. Pa. Sept. 22, 1995)).  Plaintiffs' claims against the federal government therefore run straight into the very conduct that this Court, and numerous others, have held barred by this exception.  See Cerrone, 2006 WL 2795614, at *5 n.10 ("To the extent Plaintiff claims that the [Army]

Corps [of Engineers] was negligent in exercising its retained power to oversee [the contractor]'s compliance with the contract as it related to its safety provisions, that claim is barred by the discretionary function exception to the FTCA.").

Plaintiffs also argue, however, that their complaint should be read to state a theory that individual government employees working at the Facility failed in their own duties, not delegated to Asset.  (Pls.' Resp. 20.)  The complaint alleges that Defendant's employees failed to reasonably respond to the detainee's lengthy assault on Mr. Farley and that it had actual or constructive notice of his violent tendencies.  (Comp. ¶¶ 24, 31.)  Mr. Farley's affidavit also avers that it was ICE agents who made the decision to release the detainee from the special housing unit.  (Farley Aff. ¶ 14.)  On this basis, this Court finds that Plaintiffs' allegations are sufficiently broad to include a claim based on a negligent guard theory.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (reading pro se complaint to allege negligent guard theory where plaintiff's brief stated that injuries could have been prevented had defendant adhered to its own regulations and neglected its duty of care); Coulthurst, 214 F.3d at 109 (interpreting pro se complaint to assert negligence on basis of inspection policy and employee's failure to perform diligent inspection out of laziness or careless inattention); see also Kwitek v. U.S. Postal Serv., 694 F. Supp. 2d 219, 227 (W.D.N.Y. 2010) (applying Coulthurst reasoning outside pro se context).

Applying the two-pronged test for whether an act constitutes a discretionary function, the Second Circuit has noted that "[t]he negligent guard theory is a theory of liability under the FTCA over which the district court clearly has subject matter jurisdiction." Triestman, 470 F.3d at 476.  In Coulthurst, the court determined that "an official's 'lazy or careless failure to perform his or her discretionary duties' constitutes negligent conduct that 'neither involve[s] an element of judgment or choice within the meaning of [the exception]

nor [is] grounded in considerations of governmental policy.'" <u>Banks v. United States</u>, No. 10 Civ. 6613(GBD)(GWG), 2011 WL 4100454, at *13 (S.D.N.Y. Sept. 15, 2011) (quoting <u>Coulthurst</u>, 214 F.3d at 109-10).

In the present case, Plaintiffs' submissions charge ICE agents with knowingly releasing or approving the release of a detainee with violent propensities, without mitigating the risks posed by that detainee to Asset's personnel.  Although it is not clear whether the factual circumstances relating to this charge will ultimately bring Plaintiffs within the bounds of a negligent guard theory and outside the reach of the discretionary function exception, the record is insufficiently developed at this time to properly resolve this matter. <u>See</u> <u>King</u>, 491 F. Supp. 2d at 300 (finding discretionary function exception inapplicable where allegedly negligent actions "were not based on the purposes that the regulatory regime seeks to accomplish," but where instead "a one-time decision involving one employee").

Accordingly, Plaintiffs' efforts to hold Defendant liable for failing to exercise its authority to inspect Asset's compliance with the terms of the contract must be dismissed. By contrast, claims premised on Plaintiffs' assertion that individual government officers failed to carry out their assigned tasks and responsibilities are not barred by the discretionary function exception.

### 3.    Intentional Torts Exception

Lastly, Defendant seeks dismissal of Plaintiffs' claims on the basis that they arise out of an assault and battery.  Pursuant to the intentional torts exception, the FTCA does not apply to claims "arising out of *assault*, *battery*, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h) (emphasis added).  This provision does not merely except the enumerated torts; it also excepts any claim *arising out* of them. <u>Guccione v. United States</u>, 847 F.2d 1031, 1034. (2d Cir. 1988).  This language has been

interpreted by the Second Circuit to preclude a plaintiff from clothing his claim "in the garb of negligence," to avoid dismissal of his FTCA claim.  See id.

Defendant argues that Plaintiffs' FTCA claims, although sounding in negligence, are in reality seeking to recover for an assault and battery.  Defendant asserts that Plaintiffs are essentially arguing that the Government failed to avert an attack by a private third party and relies on Marshall v. United States, 242 F. Supp. 2d 395 (S.D.N.Y. 2003), for the proposition that such claims should be interpreted as arising out of an intentional tort, and hence be barred under 28 U.S.C. § 2680(h).  Plaintiff responds that the Marshall decision is inapposite and was, in any case, rendered only after the parties had engaged in discovery, on a motion for summary judgment.

This Court agrees that the decision in Marshall is not instructive on the present dispute.  The inmate-plaintiff in that case argued that the Government "was negligent in failing to provide adequate protection and prevent the assault" of a fellow inmate. 242 F. Supp. 2d at 397.  The Court rejected that argument, concluding that "[w]ithout a sufficient showing that [the inmate]'s assault against [plaintiff] was reasonably foreseeable and avoidable, there is no evidentiary basis to support a rational determination that [plaintiff] has satisfied the requirements of an action for negligence under New York law." Id. at 398. Lacking evidence of foreseeability and avoidability, the claim reduced down to a claim for assault and battery, and was barred by § 2680(h)'s intentional torts exception.  Id.

Here, although Asset was contracted "to protect the security and other personnel employed" as well as "to adopt and implement adequate security measures, procedures and protocols" Mr. Farley's affidavit identifies a series of incidents in which ICE instructed Asset personnel.  Further, the complaint alleges that the Government was aware of the detainee's violent tendencies.  This is sufficient, at this stage, and without discovery, to overcome the FTCA's intentional torts exception.  See Smith v. Chief Exec. Officer, No. 00

CIV. 2521(DC), 2001 WL 1035136, at *5-*6 (S.D.N.Y. Sept. 7, 2001) (granting motion to dismiss where inmate-plaintiff failed to put defendant on notice of correctional officer's behavior and defendant had no reason to know of officer's sexual harassment-type behavior).[4]

Additionally, the Court notes that the assault and battery in question here was committed by a detainee, not a federal employee. Guccione, 847 F.2d at 1035 ("[W]here the intentional tortfeasor is *in no sense* carrying out the Government's business, the claim against the United States for negligent supervision of the assault does not 'arise out of' an intentional tort within the meaning of section 2680(h)"); NATS, Inc. v. U.S. Agency for Int'l Dev., No. 3:04-CV-559 (RNC), 2006 WL 118382, at *3 (D. Conn. Jan. 13, 2006).

As a result, and in light of the need to further develop the factual record before fully considering whether Plaintiffs' claims can withstand the FTCA's exceptions for independent contractors and discretionary functions, this Court finds the intentional torts exception inapplicable at this time.

## C.    Plaintiffs' Loss of Consortium Claim

Plaintiffs' complaint also alleges a cause of action for loss of consortium. (Comp. ¶ 41.)  "It is well settled under New York law that a claim for loss of consortium 'is a derivative action and, as such, its liability is dependent on the viability of a primary cause of action . . . .'" Jones v. United States, 408 F. Supp. 2d 107, 126 (E.D.N.Y. 2006); Panczykowski v. Laborers Int'l Union of N.A., Nos. 97-CV-0036A, 97-CV-0832A, 97-CV-36A(F), 97-CV-832A(F), 2000 WL 387602, at *14 (W.D.N.Y. Mar. 31, 2000) (quoting Strander v. Orentreich, 165 Misc. 2d 530, 627 N.Y.S.2d 879, 884 (Sup. Ct. 1995)).

Defendant argues that Ms. Farley failed to exhaust her administrative remedies by

---

[4]Defendant's Reply Memorandum makes clear that its intentional torts argument is partly premised on the fact that the contract delegated to Asset the duty to protect the facility's personnel.  This Court has found that there is a dispute requiring further factual development as to the degree of control the Government exercised over Asset's employees, as well as the acts of the ICE agents themselves.

not presenting her consortium claim to a relevant agency.  Plaintiffs do not attempt to rebut this argument.

Prior to bringing a claim under the FTCA, a claimant must exhaust his or her administrative remedies by making a written presentation of the claim to the appropriate federal agency.  Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir. 1998).  Although the record contains evidence that Mr. Farley's claims were submitted to not one, but several agencies, nothing supports the conclusion that Ms. Farley's consortium claim was similarly submitted.  (Comp., Exs. A, C; Whitted Decl. ¶ 3, Docket No. 9.)  "[A] plaintiff's burden is not relieved simply because the agency received relevant materials from a separate claimant for a separate claim, even if the two claims arose out of the same event."  Tamares v. United States, No. 07 Civ. 0688(PKL), 2009 WL 691002, at *4 (S.D.N.Y. Mar. 17, 2009).  Numerous courts have held that where a spouse did not include his or her claim with that of the injured individual, that claim can be dismissed for failure to exhaust available administrative remedies.  See Rodriguez v. United States, No. 02 Civ. 6947, 2003 WL 21961121, at *3-*4 (S.D.N.Y. Aug. 14, 2003) (dismissing claim where spouse did not file administrative claim); Isahack v,. United States, No. 00 Civ. 9656(BSJ), 2001 WL 1456519, at *3 (S.D.N.Y. Nov. 15, 2001) (dismissing spouse's claims for loss of affection, services, and consortium where no claim filed with relevant agency or included in other spouse's submissions); Rispoli v. United States, 576 F. Supp. 1398, 1403 (E.D.N.Y. 1983) (dismissing spouse's claim for loss of services where plaintiff failed to correct affidavit by stating amount of damages sought).

Having failed to provide this Court with evidence demonstrating that the consortium claim was filed with an agency or included in Mr. Farley's submissions, Ms. Farley's claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted as to Plaintiffs' loss of consortium claim.  The motion is denied as to Plaintiffs' FTCA claims.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 7) is GRANTED in part and DENIED in part.


SO ORDERED.


Dated: March 4, 2012
        Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court