UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL L. FARLEY

                          Plaintiff,

       v.                                            **DECISION AND ORDER**
                                                     11-CV-198S
UNITED STATES OF AMERICA,

                          Defendant.


## I.  INTRODUCTION

       Michael Farley brings this negligence action against the United States of America

under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). That Act waives the

United States' sovereign immunity with respect to some limited types of claims. Presently

before this Court is Defendant's second motion to dismiss (or, in the alternative, for

summary judgment), in which it argues that certain exceptions to the Act apply here and

serve to prohibit Farley from bringing this suit. For the following reasons, Defendant's

motion is denied.

## II.  BACKGROUND

**A.     Factual history**[1,2]

       On September 23, 2008 at approximately 9:04 p.m. Michael Farley was working as

a corrections officer at the Buffalo Federal Detention Facility located in Batavia, New York,

in the section of the facility identified as "Bravo 1" when he was assaulted by an inmate.

---

[1]More  history is set forth in this Court's March 4, 2012 Decision and Order. For the sake of brevity
and clarity, this Court will recite only those facts pertinent to the pending motion.

[2]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s
Stmnt." and "Def.'s Stmnt." respectively) to the extent that they have not been controverted by the
opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).
Defendant has moved to strike those aspects of the Plaintiff's statement of facts that do not comply with
the Local Rule. Instead, this Court will exercise its discretion in crediting only those statements that do not
contain argument and are properly supported by citation to the record.

(Def.'s Stmnt. ¶¶ 81–85; Pl.'s Stmnt., ¶ 71–74). That inmate, whose name is being intentionally withheld, had just served 28 days in the Special Housing Unit, known as "SHU" and had returned to Bravo 1 around noon that day. (Pl.'s Stmnt., ¶¶ 71-72.) According to Farley, who was the only custody officer on duty in Bravo 1 at the time, he gave a direction at roughly 9:00 p.m. to release the inmates in the assailant's block for scheduled recreation time, when, soon after, the assailant approached him from behind, exclaimed, "where's my [expletive] money, give me my [expletive] money," and began to assault him. (Id., ¶ 85.) Though his recollection of the event is not completely clear, Farley does remember being repeatedly struck on the head, struggling with the inmate, and trying to use his radio to call for help.  (Id., ¶¶  85, 86.) Shortly thereafter, at approximately 9:05 p.m., two officers arrived, stopped the assault, and handcuffed the inmate. (Def.'s Stmnt., ¶ 85.)  Farley was then taken to the hospital by a co-worker. (Pl.'s Stmnt., ¶ 87.)

Although that description captures the essence of the altercation leading to this litigation, the circumstances of Farley's employment prove relevant to the central motion before this Court.  After all, Farley has not sued the inmate who assaulted him, but the United States. Thus, this Court notes that the Detention Facility where the assault occurred is owned by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), an arm of the United States government.[3] Yet Farley was not an ICE or a federal employee; he was employed by Asset Protection & Security ("Asset"), which, under the terms of a contract with ICE in effect at the time of the assault, was to "furnish unarmed custody officer services, including management personnel, supervision, manpower, relief custody officers, uniforms, equipment, and supplies to provide custody officer services

---

[3]The Detention Facility was originally under the control of Immigration and Naturalization Services ("INS"), but this changed on March 1, 2003 when INS was dissolved and its responsibilities transferred to the Department of Homeland Security.  Homeland Security Act, Pub. L. 107-296, § 291, 116 Stat. 2135 (2002).

seven (7) days a week, twenty-four (24) hours per day at the [Detention Facility]."  (Def.'s Ex. A, p. 10, Docket No. 10-1.)

**B.     Procedural history**

Farley commenced this action on March 8, 2011 by filing a complaint in this Court. Defendant then filed a motion to dismiss on June 20, 2011.  On March 4, 2012, this Court granted Defendant's motion with respect to a loss of consortium claim brought by Farley's wife, and denied the motion on one aspect of Farley's FTCA claims. This Court dismissed, however, any claims that sought to hold the United States liable for alleged negligence in the selection and supervision of Asset employees; it also dismissed any claims that the United States "fail[ed] to exercise its authority to inspect Asset's compliance with the terms of the contract."  (Decision and Order, at 12; Docket No. 20.) In refusing to fully grant the United States' motion to dismiss, this Court noted that "the record is insufficiently developed" to issue a final ruling with respect to all of Defendant's jurisdictional arguments for dismissal. (Id.)

Thus the parties conducted discovery on the issue of jurisdiction, after which, on May 22, 2013, Defendant filed a second motion to dismiss, or in the alternative, motion for summary judgment. Defendant also filed a motion to strike "Plaintiff's Statement of Material Facts or at least those portions that contain argument, speculation, or characterization of facts or fail to cite evidence that would be admissible." (Docket No. 66.) Briefing on those motions concluded on October 31, 2013. This Court then took the motions under consideration. As discussed *supra* at n. 2, the motion to strike will be denied. The motion for dismissal is discussed below.

### III.  DISCUSSION

**A.      Legal standards**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing the existence of federal jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

The jurisdictional challenge here is based on sovereign immunity, which shields the United States from suit without its consent and strips this Court of jurisdiction. See, e.g., F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994). In resolving such a challenge, the court may consider affidavits and other evidence outside the pleadings. See J.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004), *cert. denied*, 544 U.S. 968, 125 S. Ct. 1727, 161 L. Ed. 2d 616 (2005).  Indeed, courts "must" consult factual submissions "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n. 6 (2d Cir. 2001).

Under Federal Rule of Civil Procedure 56, the court can grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact." A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress

& Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

## B.    The FTCA and its exceptions

Farley  alleges that the United States, specifically ICE, was negligent in operating the Detention Facility and that this negligence led to his injuries. This Court has already dismissed several theories on which Farley sought to base his negligence claim, and, construed broadly, this Court finds that he is now left with two: (1) that ICE, having "actual or constructive notice of the violent propensities of the detainee who assaulted the plaintiff on September 23, 2008," was negligent in failing to pass along that information; and (2) that ICE removed the inmate from the SHU despite "additional disciplinary violations" that "would have warranted additional charges and addition[al]" time in the SHU. (Compl., ¶ 31; Pl.'s Mem. at 30; Docket No. 57.) He brings these claims under the authority of the FTCA against the United States.

By way of background, "[i]t is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349 , 63 L. Ed. 2d 607 (1980) (internal citations, quotation marks, and modifications omitted). The FTCA constitutes such consent by waiving sovereign immunity for:

> [C]ivil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).[4]

---

[4]Because the assault occurred in New York, its law applies here.

But the FTCA also contains various exceptions – so-called "exception[s] to the exception," Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013) – that must be "strictly construed in favor of the government," Akutowicz v. United States, 859 F.2d 1122, 1125 (2d Cir. 1988).

Citing two of these statutory exceptions, the United States argues that this Court lacks subject-matter jurisdiction over Farley's claims.[5] The United States made similar, if not identical, arguments in its first motion to dismiss. But, presumably because the parties have now completed discovery on the jurisdictional questions presented by that motion, the United States raises its arguments anew.

This Court, as it did in the March 4, 2012 Decision and Order, will consider each exception in turn.

### 1.    Independent-contractor exception

Under the FTCA, an individual may only recover for injuries "caused by the negligent or wrongful act or omission of any *employee* of the Government." 28 U.S.C. § 1346(b)(1) (emphasis added). This is the basis for the "general rule, [that] sovereign immunity precludes suits against the United States for injuries caused by its independent contractors." Roditis v. United States, 122 F.3d 108, 111-12 (2d Cir. 1997) (per curium). Whether a worker is a federal employee or an independent contractor is a question of federal law. Leone v. United States, 910 F.2d 46, 69 (2d Cir. 1990). In making this determination, the "critical element" is "the power of the Federal Government 'to control the

---

[5]In passing, the United States also argues that a third exception – that which excludes claims for assault and battery – applies here. See 28 U.S.C. § 2680(h). But it clearly does not. Farley's suit seeks to hold the United States liable for its negligence – which led to an assault. He does not seek to hold it liable for an assault it committed. Thus, this exception does not bar his claim. See Guccione v. United States, 847 F.2d 1031, 1035 (2d Cir. 1988) ("[W]here the intentional tortfeasor is in no sense carrying out the Government's business, the claim against the United States for negligent supervision of the assault does not 'arise out of' an intentional tort within the meaning of section 2680(h)"); NATS, Inc. v. U.S. Agency for Int'lDev., No. 3:04-CV-559 (RNC), 2006 WL 118382, at *3 (D. Conn. Jan. 13, 2006).

detailed physical performance of the [individual].'" <u>United States v. Orleans</u>, 425 U.S. 807, 814, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976).  "The question is not whether a contractor must comply with federal regulations and apply federal standards, but whether its day-to-day operations are supervised by the Federal Government." <u>Leone</u>, 910 F.2d at 50.  This is known as the "strict control test." <u>Id.</u> at 49. In other words, "[w]here the Government has no contractual right to control the contractor's physical performance or supervise its day-to-day operations, . . . the Government cannot be held liable for the acts of its independent contractor." <u>Fisko v. U.S. Gen. Servs. Admin.</u>, 395 F. Supp. 2d 57, 63 (S.D.N.Y. 2005) (quoting <u>Hentnik v. United States</u>, No. 02 CIV. 9498 (DC), 2003 WL 22928648, at *4 (S.D.N.Y. Dec. 10, 2003)).

The United States argues at length that Asset – not ICE – controlled the day-to-day operations at the facility, and that, therefore, the independent-contractor exception applies. But Defendant fails to respond to the assertion that, regardless which entity had control over the day-to-day operations, ICE was responsible for failing to inform Farley of the inmate's violent propensities. Indeed, Defendant concedes that it reserved some functions exclusively for itself. ICE, for example, was exclusively responsible for the Processing Unit, conducting disciplinary proceedings, classifying inmates, moving inmates within the Facility, transporting them out of the facility, and, most importantly for the purposes of this case, intelligence gathering. (<u>See</u> Def.'s Reply Br., at 4, Docket No. 70; Def.'s Stmnt., ¶¶ 33–37, 56–62.) There is no dispute that ICE attended so-called "muster" meetings before the start of each shift, where "important information was passed on to employees." (Def.'s Stmnt., ¶ 50.) Indeed, "defendant admits that ICE compiled the information provided to it by Asset employees and others and in turn provided information vital to the safety to all employees at the [Facility]." (Emphasis removed). (Def.'s Reply Stmnt. ¶ 16; Docket No. 67.) Thus, insofar as Farley's allegation is that there was a breakdown in communication

that led to this assault and his injuries, ICE is clearly implicated in that breakdown because it retained certain duties relating to intelligence gathering and communication. Moreover, as noted, there is no dispute that ICE retained authority over in-facility inmate movements and that it made the decision to remove the inmate from the SHU. Therefore, Farley is seeking to hold the United States liable for its own actions – not those of Asset – and the independent-contractor exception does not apply. See Phillips v. United States, 956 F.2d 1071, 1077–78 (11th Cir. 1992) ("The district court did not hold the United States liable for the negligence of [the] contractors . . . ., but held the Army Corps directly liable for its own negligence in carrying out its safety responsibilities. Therefore, we hold as well that the independent contractor exception to the FTCA does not insulate the United States from liability") (internal citations omitted); King v. United States, 491 F. Supp. 2d 286, 295 (D. Conn. 2007) (quoting Berkman v. United States, 957 F.2d 108, 114 (4th Cir. 1992)) ("[T]he fact that an independent contractor may have been responsible for [plaintiff's injury] cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort") (alterations in original).

Whether Farley will ultimately be able to prove or raise genuine issues of material fact with respect to all the elements of his negligence claim is a separate matter – one not now before this Court. To date, the parties have conducted discovery on only the jurisdictional matter, (see Scheduling Orders, Docket Nos. 26, 30, 33, 35, 39, 40), and although Defendant has argued that Farley's claim falls short on the merits, this Court finds it imprudent to rule on that before full discovery and dedicated briefing is completed. For now, it is sufficient to find that the independent-contractor exception does not strip this Court of jurisdiction over Farley's remaining claims.

### 2.    Discretionary-act exception

The FTCA recognizes a statutory exception for "claim[s] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  United States v. Gaubert, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  To determine whether this exception applies, courts employ a two-prong test.  First, a court looks to whether the act in question "invol[ves] an element of judgment or choice," id. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988)).  Second, the court considers whether the actions and decisions at issue were based on considerations of social, economic, political, or other public policy.  Id. at 323.

In support of its argument that the discretionary-function exception applies, Defendant mainly argues that the "negligent guard" theory *does not* apply. That theory, discussed in this Court's earlier Decision, essentially allows for recovery when an official, because of laziness, hastiness, or general carelessness, fails to perform his discretionary duty. See Triestman, 470 F.3d at 476; Chen v. United States, No. 09-CV-2306 ARR, 2011 WL 2039433, at *6  (E.D.N.Y. May 24, 2011). But the United States does not substantively address the question whether, in the first instance, the determination of what information ought to be shared, or the decision to release the inmate from the SHU, are discretionary functions. Instead, it states summarily that "courts have commonly found that prison decisions regarding security matters are grounded in public policy." (Def.'s Br., at 14; Docket No. 45.)  This glosses over the second prong and ignores altogether the first prong of the discretionary-function-exception test.

-9-

Although the United States does argue that the decision to hire an independent contractor is a discretionary function, that issue is not before this Court. It has already ruled that "the United States cannot be held liable for the selection and supervision of independent contractors, because the selection and supervision of contractors is a discretionary function." (3/4/12 Decision and Order, at 10 (citing Cerrone v. United States, No. 03-CV-848S, 2006 WL 2795614, at *3  (W.D.N.Y. Sept. 26, 2006)). As already noted, the now-operative allegation accuses ICE officials – not Asset personnel – of negligently fulfilling their *own* duties.

In the end, it is the United States that "has the burden of proving that both requirements [of the discretionary-function exception] are met." King v. United States, 491 F. Supp. 2d 286, 296 (D. Conn. 2007) (citing Carboniero v. United States, 211 F.3d 749, 756 n. 5 (3d Cir.2000); 14 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3658.1, at 639 (3d ed. 1998)). But because it has not substantively argued that this exception applies to the two acts that are now at the center of this litigation, Defendant has not meet its burden and, at this time, this Court will not dismiss the case based on that exception.

Rather, this Court finds it appropriate to first determine whether the acts alleged to cause Farley's injuries – the release of the inmate from the SHU and the decision or failure to disclose certain information regarding that inmate – are discretionary functions. Then, after full discovery, this Court, or a trier of fact, will be better equipped to determine whether there was a failure to carry out any discretionary function under the negligent-guard theory. See, e.g., Hartman v. Holder, No. 100-CV-6107-ENV-JMA, 2009 WL 792185 (E.D.N.Y. Mar. 23, 2009) (assuming a prison guard's functions were discretionary, but finding that evidence supported the plaintiff's claim that the guard, in performing those functions, was careless).

-10-

Indeed, the negligent-guard analysis essentially requires this Court to determine whether there is sufficient evidence to suggest that Defendant was negligent generally. In fact, Defendant (in arguing that the negligent guard theory does not apply) has essentially argued that Farley's claim fails on the merits because, among things, ICE officials did not have actual or constructive notice that the inmate had a propensity for violence and that there is no evidence that any official failed to act on information. But, again, discovery has been limited to date, and although it is possible that nothing further will come to light, this Court will not rule on the merits of Farley's claim until it is complete. For now, it is sufficient to conclude that the United States has not met its burden demonstrating that the discretionary-function exception applies.

## IV. CONCLUSION

This Court finds that Farley has stated two potentially viable theories for his negligence claim against the United States: that ICE officials negligently released the inmate from the SHU, and that ICE officials negligently failed to disclose relevant information to Farley regarding the inmate's propensity for violence. The United States has argued that this case should be dismissed because the independent-contractor and discretionary-function exceptions serve to bar Farley's claims. But the independent-contractor exception does not apply because Farley has alleged that the United States – not Asset contractors – was negligent. And, although ultimately the discretionary-function exception may be applicable, at this time the United States has failed to meet its burden demonstrating that it is, as it does not set forth, in any acceptable detail, why the alleged negligent acts should be considered discretionary functions.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment (Docket No. 42), is DENIED.

FURTHER, Defendant's Motion to Strike (Docket No. 66) is DENIED.

SO ORDERED.


Dated:  January 13, 2014
            Buffalo, New York

                                                            /s/William M. Skretny
                                                         WILLIAM M. SKRETNY
                                                                  Chief Judge
                                                        United States District Court